1
2

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3   JAMES MYERS,

4           Plaintiff,

5       vs.

6   BRIAN WILLIAMS, SR., et al.,

7           Defendants.

Case No. 2:23-cv-01565-GMN-MDC

**SCREENING ORDER**

8       Plaintiff James Myers who is incarcerated in the custody of the Nevada Department of
9   Corrections ("NDOC"), has submitted a pro se civil-rights complaint under 42 U.S.C. § 1983 and
10  filed an application to proceed *in forma pauperis*. (ECF Nos. 1-1, 1-2, 5).  Myers also moves the
11  Court to issue a temporary restraining order and a preliminary injunction requiring prison officials
12  to provide him access to Jumu'ah services consistent with the tenets of his Islamic faith, for a
13  report on the status of those motions, and to extend his copy-work limit. (ECF Nos. 3, 4, 7, 8).
14  The matter of the filing fee will be temporarily deferred.  The Court now screens Myers's civil-
15  rights complaint under 28 U.S.C. § 1915A.

16      Having done so, the Court finds that Myers arguably states colorable claims under the First
17  and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act of
18  2000 ("RLUIPA"), so those claims may proceed.  For the reasons explained below, the Court will
19  refer this action to the Court's Early Inmate Mediation Program and stay it for 90 days to allow
20  the parties time to settle their dispute.  Myers's motions for a restraining order and a preliminary
21  injunction are therefore denied without prejudice to their prompt refiling should this action proceed
22  onto the normal litigation track.  His motion for a status report is denied as moot.  And Myers's
23  motion to extend his copy-work limit is denied without prejudice as premature.

24
25

1

**I.**        **SCREENING STANDARD**

2          Federal courts must conduct a preliminary screening in any case in which an incarcerated

3    person seeks redress from a governmental entity or officer or employee of a governmental entity.

4    *See* 28 U.S.C. § 1915A(a).   In its review, the Court must identify any cognizable claims and

5    dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be

6    granted, or seek monetary relief from a defendant who is immune from such relief. *See id.*

7    §§ 1915A(b)(1), (2).   Pro se pleadings, however, must be liberally construed. *See Balistreri v.*

8    *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim under 42 U.S.C. § 1983,

9    a plaintiff must allege two essential elements: (1) the violation of a right secured by the

10   Constitution or laws of the United States; and (2) that the alleged violation was committed by a

11   person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

12          In addition to the screening requirements under 28 U.S.C. § 1915A, the Prison Litigation

13   Reform Act requires a federal court to dismiss an incarcerated person's claim if "the allegation of

14   poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief

15   may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28

16   U.S.C. § 1915(e)(2) (cleaned up).  Dismissal of a complaint for failure to state a claim upon which

17   relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court

18   applies the same standard under § 1915 when reviewing the adequacy of a complaint or an

19   amended complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be

20   given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear

21   from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v.*

22   *United States*, 70 F.3d 1103, 1106 (9th Cir. 1995), *superseded on other grounds by* 28 U.S.C.

23   § 1915(e).

24          Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v.*

25   *Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is

proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels, conclusions, or a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A reviewing court should "begin by identifying [allegations] that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist, as well as claims based on fanciful factual allegations, like fantastic or delusional scenarios. *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989), *superseded on other grounds by* 28 U.S.C. § 1915(e); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

1   II.          **SCREENING OF COMPLAINT**

2          A.          **Myers's factual allegations**

3          The events of the Complaint happened while Myers was incarcerated at High Desert State

4   Prison ("HDSP"). (ECF No. 1-1 at 1).  Myers is housed in HDSP's Protective Segregation Unit

5   ("PSU"). (*Id.* at 4).  Myers is a Muslim and has a sincere belief in the Islamic faith. (*Id.*)  "Jumu'ah

6   is a scriptural mandate" of Myers's faith "and must be conducted on Fridays in the afternoon." (*Id.*

7   at 6).  Myers believes that he "faces imminent and irreparable harm" like "eternity in Hell" if he

8   does not attend Jumu'ah services. (*Id.* at 7).

9          Julio Calderin is HDSP's Chaplain. (*Id.* at 2).  Starting on January 1, 2023, Myers made

10  multiple verbal and written requests to Calderin to participate in Jumu'ah services, which are

11  "compulsory" for Myers "to fulfill his religious obligations." (*Id.* at 5).  Calderin told Myers that

12  he would not accommodate Myers's request, he would not permit any other inmate housed in the

13  PSU to attend Jumu'ah services, and would not schedule Jumu'ah services for PSU inmates. (*Id.*)

14         Near the end of June 2023, Myers was interviewed by Calderin and HDSP Associate

15  Warden for Operations Ronald Oliver about his repeated requests to attend Jumu'ah services. (*Id.*)

16  Myers explained the religious basis for his requests. (*Id.*)  Oliver responded, "I am always going

17  to say 'no' and just deny your requests." (*Id.*)  When Myers pushed the matter, Oliver angrily said,

18  "It's not gonna happen. Absolutely not." (*Id.* at 5–6).

19         Myers filed administrative grievance #20063153578 about Calderin denying his request to

20  attend Jumu'ah services. (*Id.* at 6).  Calderin "granted" Myers's grievance at the informal level,

21  and thus effectively exhausted it under Administrative Regulation 740.03.(7)(C). (*Id.*)  The Inmate

22  Grievance Report that is attached as an exhibit to the Complaint purports that Calderin responded:

23         I am in receipt of your grievance log number 2006-31-53578 as it
        pertains to your desire to worship to come to Chapel at 1:00pm, and

24         as you are aware that time is the Chapel for GP inmates and for a
        Safety and Security reasons's [sic] this is not possible.  You have

25         been on the Muslim Chapel list and come on a weekly basis at your
        allotted time from 8:30am to 9:30am.  Grievance Granted.

(ECF No. 1-2 at 2). But Calderin's granting of Myers's grievance was "fraudulent" because he did not provide Myers access to Jumu'ah services. (*Id.*) Rather, Calderin granted the grievance simply to stop the administrative process. (*Id.*)

Jumu'ah services could be conducted for inmates housed in the PSU on Friday afternoons in any one of the nine or more vacant classrooms located in HDSP's housing units, which are all equipped with high-definition surveillance camera systems. (*Id.* at 6). No legitimate penological interest is served by denying Myers and other inmates in the PSU access to Jumu'ah services. (*Id.* at 9).

Calderin "has a well-documented history of violating the civil rights of non-Evangelical Christian/non-Jewish offenders[.]" (*Id.* at 4). Inmates who practice faiths that Calderin does not prefer have sued him for allegedly violating their religious rights, including in the actions styled: *King v. Calderin*, Case No. 2:21-cv-01452-CDS-BNW; *Howard v. Connett*, 2017 WL 4682300 (D. Nev. Oct. 17, 2017); *Pasaye v. Dzurenda*, 375 F. Supp. 3d 1159, 1165 (D. Nev. 2019); *Ross v. Sandoval*, 2018 WL 5114134 (D. Nev. Oct. 19, 2018); *Pompilius v. Nevada*, 2021 WL 414534 (D. Nev. 2021); and *Guardado v. State*, 2022 WL 867234 (D. Nev. 2022). (*Id.* at 4). NDOC Director of Programs Brian Williams, Sr.; NDOC Deputy Director of Operations Harold Wickham; NDOC Director James Dzurenda; and HDSP Associate Warden for Programs Julie Williams are aware that numerous inmates have filed lawsuits against Calderin. (*Id.* at 7). Despite receiving copies of the lawsuits, those Defendants have not intervened to stop Calderin from violating religious rights of inmates who practice faiths other than Evangelical Christianity and Judaism. (*Id.*) Moreover, Julie Williams "ratifies and encourages Defendant Calderin's tortious conduct[.]" (*Id.*)

Brian Williams, Wickham, Dzurenda, Julie Williams, Calderin, and Oliver are aware from the civil-rights action styled *El Majzoub v. Davis*, 2022 U.S. Dist. LEXIS 105849 (D. Nev. June 14, 2022), that they are obligated to prepare, draft, and implement policies, customs, and practices

to ensure that Myers has access to Jumu'ah services. (*Id.* at 8).  These Defendants have not created any policy to ensure that Myers receives Jumu'ah services. (*Id.*)  Brian Williams, Wickham, Dzurenda, Julie Williams, and Oliver are policymakers who prepare, draft, submit, and implement policies like the Administrative Regulations and Operational Procedures. (*Id.*)

Calderin and Oliver "provide preferential treatment to Evangelical Christian and Jewish offenders by providing special meals and multiple scheduled services." (*Id.* at 11).  Calderin provides common fare diets, which are special religious diets, to Evangelical Christian offenders who are otherwise ineligible for such a diet under the prevailing policy in order to show favoritism to" them. (*Id.*)  Calderin provides "opportunities" like daily services, religious holidays, and special religious meals to Evangelical Christian and Jewish inmates but denies "the same opportunities" to inmates who practice other religions. (*Id.* at 12). Moreover, "[d]uring special religious holidays, Jewish offenders receive daily services and special religious meals, while [Myers] and other Muslim offenders get nothing during required holidays." (*Id.*)

**B.     Analysis of Myers's claims**

Based on the allegations above, Myers sues Brian Williams, Sr.; Harold Wickham; James Dzurenda; Julie Williams; Julio Calderin; and Ronald Oliver. (*Id.* at 2).  Plaintiff seeks monetary, injunctive, and declarator relief. (*Id.* at 13).  The Court liberally construes the Complaint as bringing claims based on three different theories of liability: (1) burdening religious exercise under the First Amendment's Free Exercise Clause and RLUIPA; and (2) religious discrimination under the Fourteenth Amendment's Equal Protection Clause.  The Court addresses each theory and any issues below.

**1.     First Amendment Free Exercise Clause and RLUIPA**

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. Amend. I.  The Supreme Court has held that inmates retain the protections afforded by the

First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  The Supreme Court also has recognized that an inmate's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.*  "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of his religion. A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce the individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (cleaned up).  Even if such a belief is substantially burdened, the regulation is "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Claims brought under RLUIPA are like free exercise claims, although RLUIPA proceeds under a slightly different framework.  RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).  RLUIPA is "more generous to the religiously observant than the Free Exercise Clause." *Jones v. Slade*, 23 F.4th 1124, 1139 (9th Cir. 2022).  "Under RLUIPA, the plaintiff bears the initial burden of demonstrating that an institution's policy constitutes a substantial burden on his exercise of religion." *Id.* at 1140 (citing 42 U.S.C. § 2000cc-2(b)).

RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(A). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his

religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C.A. § 2000cc-3(g)). RLUIPA's substantial-burden inquiry asks whether the government substantially burdened religious exercise, not whether the RLUIPA claimant is able to engage in other forms of religious exercise. *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015). A substantial burden on religious exercise must impose a "significantly great restriction" on the exercise. *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

Myers arguably states colorable free-exercise and RLUIPA claims. Myers alleges that he is a Muslim and sincerely practices the Islamic faith. Myers's religion mandates that he attend Jumu'ah services every Friday afternoon. Myers believes that he will go to Hell if he does not attend Jumu'ah services. The Supreme Court recognized in *O'Lone* that Jumu'ah is a "weekly congregational service" that "is commanded by the Koran and must be held every Friday after the sun reaches its zenith and before the Asr, or afternoon prayer." *O'Lone*, 482 U.S. at 345.

Myers informed HDSP Chaplain Calderin and HDSP Associate Warden of Programs Oliver about his religious need and desire to participate in Jumu'ah services. Myers repeatedly asked Calderin to permit him to attend Jumu'ah services. Calderin and Oliver denied Myers's requests, and Calderin refused to schedule Jumu'ah services for inmates in HDSP's PSU, where Myers is housed. Defendants' conduct serves no legitimate penological purpose as congregational services are scheduled for Evangelical Christian and Jewish inmates. The free-exercise and RLUIPA claims may therefore proceed against Calderin and Oliver.

## 2. Fourteenth Amendment Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "[T]he Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Shakur v. Schriro*, 514 F.3d 878, 891

(9th Cir. 2008) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)).  "This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann v. Cal. Dep't of Corr. and Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).  To state an equal-protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Myers arguably states a colorable claim under the Fourteenth Amendment's Equal Protection Clause about religious-based discrimination.  Myers alleges that he is a Muslim inmate who sincerely practices the Islamic faith.  Myers's faith requires him to attend Jumu'ah services every Friday afternoon.  Calderin and Oliver will not allow Myers to attend Jumu'ah services.  There is sufficient space at HDSP for inmates housed in the PSU, like Myers, to participate in Jumu'ah services, but Calderin will not schedule Jumu'ah services for them.

Defendants' conduct serves no legitimate penological purpose as congregational services are scheduled for Evangelical Christian and Jewish inmates.  Calderin and Oliver authorize special meals, daily services, and holiday meals and services to inmates who are either Evangelical Christian or Jewish.  Calderin provides the common fare diet to Evangelical Christian inmates even though they are not eligible for that diet under the prison's policies.  But Calderin "is consistently combative, angry, and hostile toward" inmates who are not Evangelical Christian or Jewish.  Liberally construed, these allegations arguably state that Calderin and Oliver purposefully fail to afford Muslim inmates the same opportunities for religious meals and services that they provide to Evangelical Christian and Jewish inmates.  The equal-protection claim may therefore proceed against Calderin and Oliver.

### 3.    Supervisory officials

It appears that Myers seeks to hold Brian Williams, Wickham, Dzurenda, and Julie Williams liable under the First and Fourteenth Amendments and RLUIPA in their capacities as supervisory officials.  Myers alleges that several inmates who do not identify as either Evangelical Christian or Jewish have sued Calderin on religious-based claims.  He provides very limited facts about those lawsuits.  And he speculates that the supervisory officials received copies of the lawsuits.

Additionally, Myers concludes that the supervisory officials were put on notice in *El Majzoub v. Davis*, 2022 U.S. Dist. LEXIS 1058949 (D. Nev. June 14, 2022), that they have a duty to implement policies, customs, and practices to ensure that he can attend Jumu'ah s services. Myer's is referencing the civil-rights action styled *Elmajzoub v. Davis*, Case No. 3:19-cv-00196-MMD-CSD.  But Myers was not a party to that action.  And there are no factual allegations in the Complaint likening the circumstances here to those in *Elmajzoub*, let alone showing that prison or department officials have a duty under that case relative to Myers.[1]

"Because vicarious liability is inapplicable to § 1983 suits, 'a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the

---

[1] The Court notes that *Elmajzoub* concerned, among other things, allegations that staff at Lovelock Correctional Center ("LCC") refused to provide inmates in the general population access to Jumu'ah services early Friday afternoons, instead offering them Friday morning time slots. *Elmajzoub*, ECF Nos. 72, 73.  On November 9, 2022, the *Elmajzoub* court entered a permanent injunction ordering, among other things, that "Defendants must schedule weekly Jumu'ah services at LCC on Fridays from 12:30 p.m. to 1:45 p.m., and all LCC Muslim inmates are allowed to attend in congregation unless there is an emergency or the circumstances of an individual inmate preclude them from attending (*i.e.*, prison lock downs, medical issues, or the inmate is in disciplinary segregation)." *Elmajzoub*, ECF No. 91 at 5.  The court limited the number of inmates who could attend Jumu'ah service to 100 individuals. *Id.* at 6.  The court modified its injunction on December 5, 2022, including providing that "Defendants must schedule weekly Jumu'ah services at LCC on Fridays from 12:30 p.m. to 1:45 p.m. for *all* LCC Muslim inmates.  Service for Level 1 Muslim inmates must be held at the Chapel.  Service for all Level 2 and 3 Muslim inmates must be held at the Chapel *or* at another location at LCC." *Elmajzoub*, ECF No. 110 at 2.  The parties in *Elmajzoub* reached a settlement, and on March 18, 2024, the court entered its order granting the parties' stipulation to dismiss with prejudice. *Elmajzoub*, ECF No. 158.  The parties' settlement agreement provides that "[t]he Permanent Injunction Order (ECF No. 91) issued in this Matter remains in force and effect." *Id.* at 4.

Constitution.'" *Keates v. Kollie*, 883 F.3d 1228, 1242 (9th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 676).  This means that "[a] supervisory official may be held liable under § 1983 only 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id.* at 1242–43 (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).  "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, 'a supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Id.* at 1243 (cleaned up) (quoting *Starr*, 652 F.3d at 1208).

The Complaint does not allege that Brian Williams, Wickham, Dzurenda, or Julie Williams were directly involved in the decisions to either deny Myers access to Jumu'ah services or not to schedule Jumu'ah services for inmates in HDSP's PSU.  Nor does the Complaint allege that the supervisory officials had knowledge of the alleged constitutional deprivations and acquiesced in them.  Rather, the Complaint concludes from scant facts and speculation that the supervisory officials knew or should have known that Calderin was biased against non-Evangelical Christian and Jewish inmates, and therefore would not reasonably respond to Myers's requests to attend Jumu'ah services.  Or the supervisory officials directly caused Calderin's and Oliver's allegedly unconstitutional conduct by breaching their duty to implement a policy authorizing Myers to attend Jumu'ah services.  But "[a] court is not 'bound to accept as true a legal conclusion couched as a factual allegation' or 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (cleaned up) (quoting *Iqbal*, 556 U.S. at 678; and *Twombly* 550 U.S. at 555).

Because bare conclusions and speculation do not state a plausible claim for damages against Brian Williams, Wickham, Dzurenda, or Julie Williams, Myers's claims against these supervisory officials in their personal capacities are dismissed without prejudice.  Myers also seeks

injunctive relief for his claims. And it does not yet appear that any of the supervisory officials could not implement injunctive relief that the Court might order in this action. So, Myers's claims under the First and Fourteenth Amendments and RLUIPA may proceed against Brian Williams, Wickham, Dzurenda, and Julie Williams only in their official capacities and solely for injunctive-relief purposes.

**III.**          **MOTIONS FOR RELIEF**

Myers moves the Court to issue a temporary restraining order and a preliminary injunction requiring HDSP officials to provide him access to congregational Jumu'ah services on Friday afternoons consistent with the tenets of his Islamic faith, and for a report on the status of those motions. (ECF Nos. 3, 4, 7). The Court has now screened Myers's Complaint, allowing claims to proceed and dismissing damages claims against supervisory officials. This action is eligible to participate in the Court's inmate mediation program, and this appears to be a case where both sides could have productive settlement discussions and save resources. For instance, it appears that department and prison officials recently resolved similar issues about Muslim inmates at LCC accessing Jumu'ah services in *Elmajzoub*. The Court will therefore refer this action to the Inmate Early Mediation Program. Considering these circumstances, Myers's motions for a temporary restraining order and a preliminary injunction are denied without prejudice to their prompt refiling should this action proceed onto the normal litigation track.[2] And Myers's motion for a status report is denied as moot.

What remains is Myers's motion to extend his copy-work limit. (ECF No. 8). An inmate has no constitutional right to free photocopying. *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991). NDOC Administrative Regulation 722.01(7)(E) provides that inmates "can only accrue a maximum of $100 debt for copy work expenses for all cases, not per case." Courts in this district

---

[2] The Court makes no decision regarding the merits of Myers's motions for a restraining order and a preliminary injunction.

have found that they can order a prison to provide limited photocopying when it is necessary for an inmate to provide copies to the court and other parties. *See Allen v. Clark Cnty. Det. Ctr.*, 2:10-cv-00857-MMD-GWF, 2011 WL 886343, *2 (D. Nev. Mar. 11, 2011).

This case is still in the screening stage. The Court has permitted Myers's claims to proceed. The Court will refer this action to the Court's inmate mediation program and stay it for 90 days to allow the parties time to settle their dispute. And the Court has denied Myers's motions for a restraining order and a preliminary injunction without prejudice to their refiling in the event this action proceeds onto the normal litigation track. But the Court has not yet ordered that any Defendant can be served with process under Federal Rule of Civil Procedure 4. Nor has the Court entered an order setting a discovery schedule. And there are no other pending motions.

Myers, therefore, does not need to provide the Court or any party copies of any document, and no party can or has requested that he produce any documents currently. Moreover, Myers has not shown that he needs expedited discovery for any matter that is currently before the Court. The Court therefore denies the motion to extend copy-work limit without prejudice as premature.

## IV.      <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that a decision on the Application to Proceed *In Forma Pauperis*, (ECF No. 5), is **DEFERRED**.

**IT IS FURTHER ORDERED** that the claims under the First Amendment's Free Exercise Clause and RLUIPA **MAY PROCEED** against Julio Calderin and Ronald Oliver. And these claims may proceed against Brian Williams, Sr.; Harold Wickham; James Dzurenda; and Julie Williams only in their official capacities and solely for injunctive-relief purposes.

**IT IS FURTHER ORDERED** that the claim under the Fourteenth Amendment's Equal Protection Clause **MAY PROCEED** against Julio Calderin and Ronald Oliver. And this claim may proceed against Brian Williams, Sr.; Harold Wickham; James Dzurenda; and Julie Williams only in their official capacities and solely for injunctive-relief purposes.

**IT IS FURTHER ORDERED** that the personal-capacity claims for damages against Brian Williams, Sr.; Harold Wickham; James Dzurenda; and Julie Williams are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Motion for a Preliminary Injunction and Motion for a Temporary Restraining Order, (ECF Nos. 3, 4), are **DENIED without prejudice to their prompt refiling should this action proceed onto the normal litigation track**.

**IT IS FURTHER ORDERED** that the Motion for a Status Report, (ECF No. 7), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Motion to Extend Copy Work Limit, (ECF No. 8), is **DENIED without prejudice as premature**.

**IT IS FURTHER ORDERED** that, given the nature of the claims that the Court has permitted to proceed, this action is **STAYED** for 90 days to allow Myers and Defendants an opportunity to settle their dispute before the Court determines whether to grant Myers's *in forma pauperis* application, the $350 filing fee is paid, an answer is filed, or the discovery process begins. **During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers will be filed in this case**, and the parties will not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so.  The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order about that matter.  Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General will file the report form attached to this order about the results of the 90-day stay, even if a stipulation for dismissal is entered before the end of the 90-day stay.  If the parties proceed with this action, the Court will then issue an order about service under Federal Rule of Civil Procedure 4 and setting a date for Defendants to file an answer or other response.  Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

"Settlement" may or may not include payment of money damages.  It also may or may not include an agreement to resolve Myers's issues differently.  A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

**IT IS FURTHER ORDERED** that if the case does not settle, then the Court will determine whether to grant Myers's *in forma pauperis* application.  Myers will be required to pay the full $350 statutory filing fee for a civil action regardless of whether the Court grants his *in forma pauperis* application.  This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Myers's application to proceed *in forma pauperis*.  If Myers is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b).  But if Myers is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

**IT IS FURTHER ORDERED** that if any party seeks to have this case excluded from the inmate mediation program, that party will file a "motion to exclude case from mediation" no later than 21 days before the date set for mediation.  The responding party will have 7 days to file a response.  No reply will be filed.  Thereafter, the Court will issue an order, set the matter for hearing, or both.

**IT IS FURTHER ORDERED** that if Myers needs an interpreter to participate in the mediation program, Myers will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

**IT IS FURTHER ORDERED** that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the Interested Party identified below for the purpose of participation in

the Inmate Early Mediation Program.  No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

The Court kindly directs the Clerk of the Court to file the Complaint and exhibits, (ECF Nos. 1-1, 1-2), and send Plaintiff Myers courtesy copies of those documents.

The Court kindly further directs the Clerk of the Court to add the Nevada Department of Corrections to the docket as an Interested Party and electronically provide a copy of this order and copies of all items previously filed in this case by regenerating the Notices of Electronic Filing on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the Interested Party on the docket.  This does not indicate acceptance of service.

**DATED** this __30__ day of ___April___, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

1

**UNITED STATES DISTRICT COURT**

2

**DISTRICT OF NEVADA**

3

JAMES MYERS,

4

    Plaintiff,

5

    vs.

6

BRIAN WILLIAMS, SR., et al.,

7

    Defendants.

Case No.  2:23-cv-01565-GMN-MDC

**REPORT OF ATTORNEY GENERAL
RE: RESULTS OF 90-DAY STAY**

8

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS
FORM.  THE INMATE PLAINTIFF WILL NOT FILE THIS FORM.**

9

10

On _____, the Court issued its screening order under 28 U.S.C. § 1915A,

11

stating that certain specified claims in this case would proceed.  The Court ordered the Office of

12

the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of

13

the Court's screening order to indicate the status of the case at the end of the 90-day stay.  By filing

14

this form, the Attorney General's Office hereby complies.

15

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and

16

follow the instructions corresponding to the proper statement.]

17

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed
mediator during the 90-day stay.**  [If this statement is accurate, check **ONE** of the six statements

18

below and fill in any additional information as required, then proceed to the signature block.]

19

20

_____ A mediation session with a court-appointed mediator was held on
_____, and as of today, the parties have reached a settlement (*even if*

21

*paperwork to memorialize the settlement remains to be completed*).  (*If this box is checked,
the parties are on notice that they must SEPARATELY file either a contemporaneous
stipulation of dismissal or a motion requesting that the Court continue the stay in the case
until a specified date upon which they will file a stipulation of dismissal.*)

22

23

24

_____ A mediation session with a court-appointed mediator was held on
_____, and as of today, the parties have not reached a settlement.  The
Attorney General's Office therefore informs the Court of its intent to proceed with this

25

action.

26

_____ No mediation session with a court-appointed mediator was held during the 90-day

27

stay, but the parties have nevertheless settled the case.  (*If this box is checked, the parties
must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting*

28

1

*that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____.

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of today, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Attorney General's Office is filing a separate document detailing the status of this case.

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and, as of today, have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ The parties engaged in settlement discussions and, as of today, have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and, as of today, have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____         _____
                            Print                                                  Signature

Address: _____         Phone:_____

         _____         Email:_____

2